IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | NO. 3:19-CR-327-M |
| OMER KUZU | |

## FACTUAL RESUME

In support of Omer Kuzu's plea of guilty to the offense in Count One of the Indictment, Omer Kuzu, the defendant, Jason Hawkins, the defendant's attorney, and the United States of America (the government) stipulate and agree to the following:

## ELEMENTS OF THE OFFENSE

To prove the offense alleged in Count One of the Indictment, charging a violation of 18 U.S.C. § 2339B, that is, Conspiracy to Provide Material Support to Terrorism, the government must prove each of the following elements beyond a reasonable doubt:[1]

*First.* That two or more persons entered into an agreement that had as its object providing material or resources, namely themselves as personnel, to a designated foreign terrorist organization, that is the Islamic State of Iraq and al-Sham, commonly known as ISIS;

*Second:* That the defendant knowingly became a member of the conspiracy with the intent to further its unlawful purpose.

The elements of Material Support of Terrorism, a violation of 18 U.S.C. § 2339B, are as follows:[2]

---

[1] 18 U.S.C. § 2339B; *United States v. Jama*, 217 F.Supp.3d 882. 886 (E.D. Va. 2016); *United States v. Kabir*, 2015 WL 631951 (C.D. Cal. 2015), appeal pending.

*First.*     That the defendant knowingly provided material support or resources to a foreign terrorist organization, that is ISIS; and

*Second.*   That the defendant did so knowing that the organization was a designated foreign terrorist organization, or knowing that it engaged or engages in terrorist activity.

The term "material support or resources" means any property, tangible or intangible, or service, including personnel (one or more individuals who may be or include oneself).

As used in this chapter, the term "terrorist activity" means any activity which is unlawful under the laws of the place where it is committed (or which, if it had been committed in the United States, would be unlawful under the laws of the United States or any State) and which involves any of the following: The seizing or detaining, and threatening to kill, injure, or continue to detain, another individual in order to compel a third person (including a governmental organization) to do or abstain from doing any act as an explicit or implicit condition for the release of the individual seized or detained.

## STIPULATED FACTS

Omer Kuzu admits and agrees that beginning in or about April 2011 and continuing to the date of this indictment, within the Northern District of Texas, and elsewhere, the defendant, **Omer Kuzu,** a citizen of the United States, did knowingly conspire, with persons known and unknown to the grand jury, to provide material support and resources, as that term is defined in Title 18, United States Code, Section 2339A(b)(1), to wit personnel, including himself, to a foreign terrorist organization, namely, the Islamic State of Iraq and al-Sham (ISIS), which at all relevant times was designated by the Secretary of State as a foreign terrorist organization pursuant to Section 219 of the Immigration and Nationality Act, knowing that the organization was a designated foreign terrorist

---

[2] *Eleventh Circuit Pattern Instruction*, 01 091.2 (2019).

organization and knowing that the organization had engaged in, and engages in, terrorist activity and terrorism, all in violation of Title 18, United States Code, Section 2339B(a)(1).

1. On October 16, 2014, Omer Kuzu and his brother, Yusuf Kuzu, departed the United States for Istanbul, Turkey. Both Omer Kuzu and Yusuf Kuzu are United States Citizens by birth, but have dual citizenship with Turkey based on their parents' Turkish citizenship. Omer Kuzu and Yusuf Kuzu were scheduled to return to the United States on October 22, 2014 via Turkish Airlines flight number 33, but both failed to board.

2. Approximately four months before Omer Kuzu and Yusuf Kuzu departed the United States, Abu Bakr al-Baghdadi, the leader of ISIS, announced that the so-called Islamic Caliphate had been re-established.

3. After arriving in Turkey in October 2014, Omer Kuzu and Yusuf Kuzu traveled by bus to Gaziantep, Turkey, and then on to Orfa, Turkey. After they arrived in Orfa, Omer Kuzu and Yusuf Kuzu called a phone number from a hotel, and an ISIS taxi came to get them. They were then smuggled across the border into Syria, where they stayed in multiple "waiting houses" before eventually ending up in Mosul, Iraq. Once in Mosul, Omer Kuzu and Yusuf Kuzu received five days of physical and weapons training from ISIS instructors with approximately forty other foreign fighters.

4. After the training in Mosul, Omer Kuzu and Yusuf Kuzu were sent to Raqqah, Syria. Omer Kuzu then started work with the ISIS telecommunications directorate in January 2015. Shortly thereafter Omer Kuzu pledged Bay'ah (allegiance) to Abu Bakr al-Baghdadi and the Caliphate. After pledging Bay'ah to ISIS, Omer Kuzu

began receiving a $125 per month stipend from ISIS and was given a Chinese-made AK-47 that he carried with him most of the time. Omer Kuzu went by the kunyas (alias) Abu Duha al-Turki, Abu Yunas al-Turki, and Abu Shaymaa al-Turki. Further, after pledging Bay'ah, Omer Kuzu was given additional rights such as housing. One of Omer Kuzu's additional tasks while working for the ISIS telecommunication center was to develop a secondary or a backup communication method in and around Raqqah, Syria.

5. Omer Kuzu married and took an ISIS bride. Omer Kuzu and the woman had a child together. In addition to working at the ISIS telecommunication center, Omer Kuzu was sent to the "second line" near Kobani, Syria behind the front line to provide communications support for ISIS fighters. Omer Kuzu would help setup antennas for the frontline fighters. Omer Kuzu also went to the second line in Hama, Syria. Omer Kuzu also worked in the Caliphate's technology center.

6. In March 2019, Omer Kuzu was captured and surrendered in the town of Baghuz with approximately 1,500 suspected ISIS fighters by the SDF.

7. Omer Kuzu saw Yusuf Kuzu, as well as Murat Kuzu (his middle brother), Muhammad Kuzu (his cousin), and Amal Kamalmaz (Muhammad's wife) in Syria and with ISIS. Based on Omer Kuzu's own observations and knowledge of ISIS, he knew Yusuf Kuzu, Murat Kuzu, Muhammad Kuzu, and Amal Kamalmaz to be members of and acting on behalf of ISIS.

8. Omer Kuzu knew that ISIS had been designated as a foreign terrorist organization by the United States Secretary of State. Omer Kuzu also knew that ISIS engaged in terrorist activities.

9. The defendant agrees that the defendant committed all the essential elements of the offense. This factual resume is not intended to be a complete accounting of all the facts and events related to the offense charged in this case. The limited purpose of this statement of facts is to demonstrate that a factual basis exists to support the defendant's guilty plea to Count One of the Indictment.

AGREED TO AND STIPULATED on this 10th day of March, 2020.

_____
OMER KUZU
Defendant

_____
JASON HAWKINS
U.S. Federal Public Defender
Attorney for Defendant

ERIN NEALY COX
UNITED STATES ATTORNEY

_____
ERRIN MARTIN
Assistant United States Attorney
Texas State Bar No. 24032572
10135 Baronne Circle
Dallas, Texas 75218
Tel: 214-659-8838
errin.martin@usdoj.gov

_____
MICHAEL DITTOE
Trial Attorney, U.S. Dept. of Justice
National Security Division
Ill. Bar. No. 6191470
950 Penn. Ave., N.W.
Room 7619
Washington, D.C. 20530